**UNITED STATES of America, Plaintiff,**

v.

**LOCKHEED MARTIN CORPORATION, Defendant.**

**No. 97–1433–Civ–ORL–18B.**

United States District Court, M.D. Florida, Orlando Division.

Feb. 27, 1998.

Karen L. Gable, Orlando, FL, Michael F. Hertz, Alan E. Kleinburd, Carolyn G. Mark, Washington, DC, for USA, petitioner.

Allen J. McKenna, Garwood, McKenna, McKenna, Wolf, P.A., Orlando, FL, James A. Bensfield, Mary Lou Soller, Miller & Chevalier, Chartered, Washington, DC, for Lockheed Martin Corporation, respondent.

## ORDER

### Nature of Action

BAKER, United States Magistrate Judge.

This matter comes before the Court on the Government's Petition for Enforcement of

Administrative Subpoenas (Doc. No. 1). Pursuant to statutory authority, the Department of Defense Inspector General ("IG") served subpoenas on Respondent Lockheed Martin Corporation ("Lockheed") seeking to inspect and copy various categories of voluminous documents related to Lockheed's contract with the government known as the LANTIRN project. The IG is investigating possible overcharges in connection with the project. There are also an open criminal investigation and a pending *qui tam* action arising from the same concerns about LANTIRN billings.

Lockheed produced some of the responsive documents but objects to producing others on grounds of privilege. The Government filed this action to compel production of all of the requested documents.

This court has jurisdiction over issues arising from IG administrative subpoenas under 5 U.S.C.App. 3, § 6(a)(4) and 28 U.S.C. § 1345. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636, subject to review under Rule 72, F.R.Civ.P.

An Order to Show Cause (Doc. No. 5) why the subpoenas ought not be enforced was issued, and Lockheed filed a response in opposition (Doc. No. 6). The parties have filed various declarations or affidavits and exhibits along with written arguments. An evidentiary hearing and oral argument were also held. The matter is now ripe for determination.

## Background

The present subpoena is the result of the IG's desire to examine possible accounting irregularities in the multi-billion dollar LANTIRN program. Lockheed has received numerous contracts for LANTIRN pods, and receives most of its fees through progress payments, whereby Lockheed certifies to the Air Force that it is entitled to reimbursement for certain contract costs that have been incurred over a specific time period. The Air Force relies upon Lockheed's accounting system to determine what monies are owed to Lockheed for its work each month on the LANTIRN program. The respondent has already admitted to the Department of Defense ("DoD") that its past accounting practices on this program resulted in over $3 million in overcharges to DoD. Lockheed has also admitted that, as a result of these accounting irregularities, it was forced to write off over $70 million on the LANTIRN program. The IG wishes to determine the full nature and scope of these admitted accounting irregularities, and to determine the existence of any criminal, civil or contractual liability for these irregularities, Thus, this inquiry is within the broad authority of the IG to examine DoD contracts.

■ Subject to recognized privileges, a federal agency's administrative subpoena should be enforced if (a) the investigation and the issuance of the subpoena are within the authority of the agency, (b) the demands sought are reasonably related to the inquiry, and (c) the demands are not unduly burdensome or unreasonably broad. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368–369, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208–209, 66 S.Ct. 494, 505–506, 90 L.Ed. 614 (1946); *Endicott v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943). As a general rule, an administrative subpoena should be enforced if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. *United States v. Florida Azalea Specialists*, 19 F.3d 620, 623 (11th Cir.1994) (citing *Federal Election Commission v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284 (11th Cir. 1982)).

■ The standard of relevance in a subpoena enforcement proceeding is that the materials sought "be reasonably relevant" to the agency's inquiry, *United States v. Morton Salt Co., supra*, 338 U.S. at 652, 70 S.Ct. at 369. "So long as the agency makes a 'plausible' argument in support of its assertion of jurisdiction, a district court must enforce the subpoena if the information sought

there is not 'plainly incompetent or irrelevant to any lawful purpose' of the agency." *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir.1991) [citations omitted].

Lockheed does not contest the authority of the IG to request documents by subpoena nor the relevance of the documents to the inquiry at hand. At issue is whether some of the requested documents are protected by the attorney client privilege, the work product doctrine or some other privilege. The contested documents all arise from Lockheed's internal audit of the LANTIRN project conducted in late 1995 and early 1996. The withheld papers from this audit have been categorized by the parties as:

1) Historical source documents (privilege is claimed only as to the internal auditors' notes)

2) Audit work papers

3) Tapes, transcripts and notes of employee interviews

4) Draft and final reports and analysis resulting from the audit.

Lockheed contends that all of these documents and the audit itself are work product generated in reasonable anticipation of litigation, that some of the documents are subject to the attorney client privilege and that the audit and its resulting analytical report should be afforded a "self critical examination" privilege. The IG maintains that anticipation of litigation was not the motivation for the audit (at least until near its conclusion), that few, if any, of the communications were attorney-client and that no self critical examination privilege is recognized under the law.

### Findings of Fact

In addition to the facts stated above, the Court finds from the submissions of the parties the following facts. In 1995 Lockheed, aware of issues concerning proper accounting for work on the LANTIRN project, undertook a major internal audit of the project.

Stephan Wylong, an audit manager, headed up this effort. According to Mr Wylong's declaration (Doc. No. 6, Ex. A), the audit was divided into two phases. "Phase I was an independent validation and review of the work performed by the LANTIRN program personnel ... Phase II was an analysis of the 'root causes' of the problems identified." (*Id.* at ¶ 4.)

Phase I was largely completed in mid December 1995. The results of that part of the internal audit were shared with Lockheed's outside auditors, Ernst & Young. Documents from that Phase have likewise been given to the government pursuant to the subpoenas.

In December 1995 or January 1996 [1] Maryanne Lavan, an attorney employed by Lockheed, discussed Phase II with Mr. Wylong. Ms. Lavan's precise role and degree of participation in the early stages of Phase II is undocumented and has only been vaguely described by the parties involved. After Ms. Lavan moved to a new position as Vice President and General Counsel in Lockheed's Electronic Sector, she became more involved in the audit and investigation. Ms. Lavan asserts that, pursuant to high corporate direction, all of Phase II was to be performed at her direction in her capacity as legal counsel. That direction and the substance of Ms. Lavan's involvement are also only vaguely expressed. The evidence does not suggest that the actual carrying out of Phase II was materially altered from the plan developed under Mr. Wylong's direction prior to any involvement by Ms. Lavan. Though Lockheed argues that Phase II did not begin until she became involved, it is more accurate to say that Ms. Lavan did not become involved until Phase II began. There is no indication that Phase II waited for her.

In February 1996, Lockheed was served with a subpoena from the IG. In March, Ms. Lavan increased her personal involvement, including participation in some employee in-

---

**1.** Memories as to the date of these events have apparently faded and documentation does not clarify the timing.

terviews. Even at this point, the extent of her involvement is not well developed in this record. There is no indication that Ms. Lavan designated whom to interview or worked on the questions asked. Nothing suggests that any legal work product was involved, apart from the introductory disclaimers to advise the employees that Ms. Lavan represented Lockheed and not them.

Some of the interviews were recorded. Several of those interviewed have declined to speak to government agents, invoking their rights under the Fifth Amendment.

In the course of Phase II, Ms. Lavan reported orally to Lockheed executives. Mr. Wylong drafted an audit report and memorandum of findings and recommendations. Those papers, in several drafts, were sent only to Ms. Lavan, who made suggestions for revisions. Ms. Lavan used the drafts and final versions of the report and memorandum in giving advice to Lockheed. The report and memorandum have been used by Ms. Lavan only in giving advice to corporate executives.

### Conclusions of Law

In addition to the jurisdictional matters described above, the Court concludes as follows.

### Applicable Law

In addition to the statutory provisions cited above, this case is covered by federal common law privilege principles. The discovery and evidentiary limits of the Federal Rules of Civil Procedure and Evidence do not apply, except for reference by analogy. Many cases under the Rules include helpful discussion of the principles informing the common law privileges.

■ *Attorney Client Privilege* —In order to foster the effective rendition of legal advice, communications between an attorney and her client are, subject to certain conditions and exceptions, privileged from disclo-

sure to third parties. A client claiming the privilege must establish that the communications occurred in connection with the rendition of legal (not business) advice, that the communications were between an attorney and the client, and that the communications were intended to be (and were in fact) made in confidence. Created in less complex times than our own, this privilege's application to the affairs of large corporations is far more problematic than simply allowing an individual to get informed advice as to the legal implications of his deeds and plans.

■ Corporations, acting through their employees, are entitled to the privilege for both in house and outside counsel. Defining and establishing the prerequisites is more difficult in this context. In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court established that privileged communications are not limited to those in control of the corporation. When executives who will act on legal advice direct lower level employees to provide information to counsel, those communications (though not the underlying information) may qualify for the privilege.

■ *Attorney Work Product Doctrine* — Allied with the attorney client privilege is protection afforded attorney work product. The Supreme Court delineated the basics of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Material prepared by an attorney [2] in anticipation of litigation is protected from disclosure to other parties. This protection is not absolute but may be overcome by a showing of compelling need. The more the material reveals or reflects the attorney's thought processes (rather than a mere collection of facts or data), the greater the amount of protection afforded.

■ *Self Examination Investigation* — Courts have, with few exceptions, declined to recognize any privilege for internal organizational self examinations. Arguments can be

---

**2.** Broader than the common law doctrine, Rule 26, F.R.Civ.P., provides protection for material prepared on behalf of a party, not merely those prepared by an attorney.

on both sides of the issue whether the public interest is better served by shielding such investigations. It is sufficient for *this* case to observe that the IG's statutory authority contains no such limitations. Nor would shielding such information be consistent with the kind of auditing oversight contemplated by the applicable statutes. The Court therefore concludes that no privilege exists to prevent the IG from obtaining material that could be characterized as part of a self examination.

### Analysis of Document Categories

■ *Historical File Documents (Annotated)* —Lockheed agrees that these documents should be produced but wishes to redact the notes added by auditors during Phase II. These notes were not communications to an attorney nor any part of an attorney's work product. They are not protected from disclosure.

*Audit Work Papers* —These documents were prepared by Mr. Wylong and his accounting staff. As with the annotations on file documents, these documents do not constitute confidential communications nor are they attorney work product.

■ *Employee Interviews* —The record does not support Lockheed's contention that these interviews were planned or conducted by Ms. Lavan. The interviews were part of Mr. Wylong's effort. The record compels the conclusion that Ms. Lavan attended and participated in some of the interviews merely to have a better idea of what was going on during the review. The situation here contrasts sharply with the typical attorney client confidential conversation and with the usual trial preparation undertaken by an attorney. Lockheed has not carried its burden of demonstrating that Phase II generally or these interviews in particular were Ms. Lavan's work product. It is also clear that Phase II was conceived and designed not for litigation but as part of Lockheed's business activity, albeit not a usual part of Lockheed's business. The fact that Lockheed does not ordinarily need to conduct internal audits of this kind does not mean that they are in anticipation of litigation.

■ *Mr. Wylong's Report and Memorandum (Final and Drafts)* —In contrast to the audit papers, the report and memorandum were intended specifically and exclusively for communication from Mr. Wylong to Ms. Lavan to enable Ms. Lavan to advise higher authority within Lockheed on legal issues. The record discloses that Mr. Wylong and Ms. Lavan exchanged drafts leading to final versions of the report and memorandum. The record supports Ms. Lavan's assertion that, by the time of the report, litigation was certainly contemplated. The exchange of drafts suggests that the report and memorandum include both privileged communications as well as Ms. Lavan's own analysis. Thus these documents qualify for protection under both the attorney client privilege and the work product doctrine.

### Order

Upon the foregoing, the Government's Petition to Enforce Subpoenas is **GRANTED** in part and **DENIED** in part. Lockheed shall produce all source documents and audit work papers responsive to the subpoenas. In addition, Lockheed shall produce all documentation of employee interviews. The report and memorandum, including all drafts, are privileged and need not be produced.

The required documents shall be produced within 14 days of this Order.